UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHERYL ROSE KUSLICK,

       Plaintiff,

v.                                          Case Number 09-12307-BC
                                               Honorable Thomas L. Ludington

JAMES ROSZCZEWSKI,

       Defendant.

                                         /

## **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant James Roszczewski, a Michigan state trooper, swore out a complaint against Plaintiff Cheryl Rose Kuslick for the felony offense of obstructing his lawful collection of handwriting exemplars from Plaintiff's daughter on May 21, 2008. Plaintiff contends that Defendant's sworn statement in support of the complaint and arrest warrant that he "required one hundred hand writing samples and only obtained forty, because [Plaintiff] ordered her daughter to leave with her not giving the amount of samples required . . ." was false and erroneously furnished to provide probable cause for the warrant and Plaintiff's later arrest, detention, and prosecution. Plaintiff was arrested and served an evening in jail. The charge of obstruction was dismissed on September 24, 2008, by the Honorable Allen C. Yenior, who concluded that "Defendant [Plaintiff herein] did not obstruct the service or execution of the search warrant when she told her daughter to leave the State Police Post." Plaintiff's complaint initiating this case for wrongful arrest, malicious prosecution, and First Amendment retaliatory prosecution pursuant to 42 U.S.C. § 1983 was filed on June 15, 2009.

Now before the Court is Defendant's motion for summary judgment [Dkt. # 9] filed on September 8, 2009. Defendant seeks the determination of qualified immunity. Plaintiff filed a response [Dkt. # 14] on October 9, 2009, generally arguing that Defendant is not entitled to qualified immunity and that a period for discovery is necessary to resolve Defendant's motion. Defendant filed a reply on October 15, 2009.

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, Defendant's motion for summary judgment will be denied.

I

Plaintiff is a resident of the City of Hale in Iosco County, Michigan. Defendant is a Michigan State Trooper, who was assigned to the East Tawas State Police Post in Iosco County. On March 10, 2008, Defendant was assigned to investigate a message found on the wall of a stall in the women's bathroom at Hale High School, which read, "I want to blow up the school." On May 16, 2008, Defendant obtained a search warrant for handwriting samples from Plaintiff's nineteen year old daughter, Sarah Rose Kuslick ("Sarah"). The search warrant for handwriting samples from Sarah less than perfectly describes the scope of the warrant to be "handwriting samples sufficient amount requested by Lt. Thomas Riley Michigan State Police Crime Laboratory Questioned Document Section, Lansing, Michigan." Def. Br. Ex. 2. Defendant's affidavit supporting the search warrant includes the following statement in support of a finding of probable cause:

> That TPR. ROSZCZEWSKI learned from LT. THOMAS RILEY, Michigan State Police Crime Laboratory Questioned Document Section, Lansing, Michigan that *at least thirty*

-2-

> *handwritten printed samples* from SARAH ROSE KUSLICK writing "I want to blow up the school" would be needed for analysis.

Def. Br. Ex. 3 (emphasis added).

On May 21, 2008, Plaintiff, Plaintiff's husband, and Sarah appeared at the East Tawas Police Post. Plaintiff's complaint alleges that Defendant knew that Sarah did not want to talk to the police, and that Plaintiff was concerned that Sarah might be manipulated into a false confession. Plaintiff's complaint alleges that Sarah was a special education student, had at least one learning and developmental disability, and was the recipient of an individualized education plan pursuant to the Individuals With Disabilities Education Act. Indeed, Defendant Roszczewski's March 10, 2008, original incident report documenting an interview with Sarah corroborates these facts as follows:

> Officer attempted to interview SARAH ROSE KUSLICK at her residence. Present was her mother CHERYL KUSLICK and her father GEORGE KUSLICK. I contacted SARAH as she was getting off the school bus and she agreed to talk to me. Her mother was very defensive and would not allow me to talk to her alone in the patrol unit. I wanted to talk to SARAH to see what she had to say and her mother sat in on the interview. CHERYL KUSLICK stated that her daughter was severely mentally handicapped, dysplexic and she did not want me to manipulate her into a confession.

Def. Br. Ex. 1.

In an affidavit, Plaintiff states that during the execution of the warrant, she was not permitted to be in the same room as her daughter, but was allowed to stand in the hallway, where she could see and hear what was going on in the room with Sarah. Pl. Br. Ex. 1 (Pl. Aff. ¶¶ 6-7, Oct. 5. 2009). Plaintiff states that at "some point" she was "harassed" by a trooper, who told her to go around the corner. *Id.* ¶ 8. Plaintiff did not, and the trooper walked away. *Id.* ¶ 9. Plaintiff states that about ten minutes later, Lieutenant Robert J. Lesneski "rushed toward me and ordered me to leave the building." *Id.* ¶ 10. Plaintiff replied, "you need to back away from me, you reek of alcohol. I will leave the building as soon as my daughter is finished." *Id.* ¶ 11. Plaintiff states that Lieutenant

Lesneski appeared to be infuriated, got "very red in the face," and "the tone of his voice and the way he treated me became more aggressive." *Id.* ¶ 12. Then, Plaintiff states that Sarah told her, with Defendant a few feet away,"It's okay mom, I'm done. I gave him more than he asked for." *Id.* ¶ 13-14. Finally, Plaintiff states that Defendant never told Sarah or Plaintiff that he needed more handwriting samples from Sarah. *Id.* ¶ 16.

In an affidavit, Sarah states that Defendant told her that he needed thirty handwriting samples. Pl. Br. Ex. 2 (S. Kuslick Aff. ¶ 9, Oct. 5, 2009). Sarah states that after she "completed thirty samples he said he needed some extras just in case. After that I gave him more." *Id.* ¶ 11. Sarah further states:

> Then Lt. Lesneski came into the station grabbing my mom by the arm and shoving her, making a big deal about my mom and dad being in the building. . . . He told them they had to leave. My mom said she would be glad to leave when I was done giving writing samples. . . . My mom looked into the room and I made eye contact with her. . . . I said, "It is okay mom, I gave him more than he asked for." . . . Trooper Roszczewski also said, "It's ok, you're done." . . . We proceeded to leave but the conflict between my mom and Lt. Lesneski continued. . . . He grabbed my mom by the arm and pulled and pushed her towards the door. . . . On the way out the door Lesneski said to my mother, "I will make you disappear." . . . He then followed us up the sidewalk and said to me, "you have no right to be talking, you've been in enough trouble with the police, and you better watch yourself."

*Id.* ¶ 12-20.

Defendant Roszczewski's supplemental incident report dated May 30, 2008, provides, in pertinent part, as follows:

> I had SARAH KUSLICK write "I want to blow up the school on the blank paper, taking each sample from the wall. I obtained forty samples *out of the one hundred that I needed* before being disrupted by CHERYL KUSLICK who was in the lobby staring at her daughter and myself while I obtained the samples. She was told by F/LT. LESNESKI to leave the Post and she refused. *CHERYL KUSLICK was loud and disruptive and told her daughter to leave with her which she did and I was unable to obtain the one hundred samples that I needed for the Crime Lab.*
> . . .
> CHERYL KUSLICK came into Post 32 with her daughter this date. CHERYL KUSLICK

-4-

stated that this was already blown out of proportion. She was asked to stay in the lobby at which time she wanted to stay with her daughter in the office room where I was taking the hand writing samples. SGT. GRONDA had to intervene and physically block her entry into the room, informing her that this was a search warrant and that she was not going to dictate how this investigation would be conducted. Further that if she intervened that this would be obstruction of justice. She became loud and disruptive. F/LT. LESNESKI returned to the post from a meeting and immediately inquired from SGT. GRONDA the status of the search warrant. SGT. GRONDA advised him that CHERYL KUSLICK was being disruptive and failed to follow directions as to leaving the post or stand out in the lobby as the search warrant was being executed. F/LT. LESNESKI asked CHERYL KUSLICK to leave the Post at which time she told him she smelled alcohol on his breath and that he had been drinking. Again F/LT. LESNESKI asked her to leave the Post. CHERYL was loud and argumentative. She stated she was not going to leave her daughter with the police. *F/LT. LESNESKI again advised her that if her daughter leaves she would be in violation of the search warrant and if she took her prior to getting what we needed she would be obstructing the officers investigation.* CHERYL KUSLICK yelled that they complied and told us "we had enough." CHERYL left the Post and told her daughter to leave with her. I was unable to get the one hundred samples I had intended to get for the Crime Lab due to CHERYL KUSLICK'S obstruction.

Def. Br. Ex. 4 (emphasis added).

Additionally, Lieutenant Lesneski's supplemental incident report dated June 4, 2008, provides:

*Note: At the time of this incident, I was in full uniform and had just arrived in a marked patrol car from a complaint in Oscoda. I had not been drinking, nor have I ever consumed alcohol while on duty or in uniform.*

I arrived back at the post at approximately 4:20pm and was surprised to see Sgt. Gronda at the front desk. As a rule, the Sergeants work 10-hour shifts from 6a-4p. I subsequently observed a man and a woman blocking the stairwell leading to my office. The woman was standing on one of the steps while glaring at Trooper Roszczewski.

I looked over at Trooper Roszczewski (utilizing the secretary's office) and observed him directing a young woman to provide hand writing samples. It appeared that the couple in the stairway was related to the person providing the hand writing samples.

Sgt. Gronda subsequently informed me that he felt compelled to stay in the post because the couple (primarily the woman) had been giving him and Trooper Roszczewski a difficult time by interfering with a court order for hand writing samples.

I subsequently approached the couple and explained to them that the administrative operation of the post closed at 4:00pm; that it was currently 20-minutes after 4:00 and I was about to close up the post. I suggested that they have a seat in the car (parked in the parking

> lot) until Tpr. Roszczewski finished with collecting the hand writing samples.
>
> The woman immediately started accusing me of having booze on my breath and stated "I can smell booze on your breath, we are not leaving." I started to instruct her that I had not been drinking when she interrupted in a loud voice "I'm not leaving, you're a drunk! I'm not leaving without my daughter". She then stated "I want you to get me an attorney". I advised her she had every right to call an attorney, that there were several in Tawas to choose from; however I was not compelled to get her an attorney.
>
> I explained to her that her daughter is under a court order to provide hand writing samples and she would be in violation of the court order; when I was again interrupted by her statement "You have the wrong person, my daughter didn't do this. You're a drunk." She then ordered her daughter to leave the post and come with her.
>
> I advised the woman that she was obstructing an investigation and a court order; that serious ramifications could occur including being arrested for obstructing. The woman responded "I don't have to listen to you, you're a drunk!"
>
> The woman subsequently walked out of the post with her male companion and her daughter.
>
> My knee-jerk reaction was to arrest the woman on site for obstructing; however I knew she was extremely volatile and potentially violent. The possibility existed that she could become injured during a struggle. The lady appeared to be extremely overweight with poor navigability. I did not want to perpetuate the problem and elected to seek a prosecutor's review of the circumstances.

Def. Br. Ex. 10 (emphasis in original).

Defendant Roszczewski's "Statement In Support" of the complaint for an arrest warrant for

Plaintiff, dated June 6, 2008, sworn under oath, provides, in pertinent part:

> That on the above date and venue CHERYL ROSE KUSLICK brought her daughter in to give handwriting samples to TPR. ROSZCZEWSKI on a search warrant.
>
> That while at Post 32 CHERYL ROSE KUSLICK interfered with the investigation by not following orders from SGT. GRONDA and being loud and disruptive.
>
> That F/LT. ROBERT LESNESKI MSP32 Post Commander requested CHERYL ROSE KUSLICK leave the Post and she refused and a second request had to be made and she accused him of drinking.
>
> *That TPR. ROSZCZEWSKI required one hundred hand writing samples and only obtained forty, because CHERYL ROSE KUSLICK ordered her daughter to leave with her not giving the amount of samples required, violating the search warrant.*
>
> That a warrant for CHERYL ROSE KUSLICK is requested for Obstructing Justice.

Def. Br. Ex. 6 (emphasis added).

On June 7, 2008, Plaintiff was arrested at her home. The affidavit of Plaintiff's daughter, Katy Kuslick ("Katy"), states that Plaintiff asked the officers why she was being arrested. Pl. Br. Ex. 3 (K. Kuslick Aff. ¶ 8, Oct. 7, 2009). Katy states that one of the officers told Plaintiff that the warrant states obstruction of justice. *Id.* ¶ 9. Katy states that the second officer responded, "You called my commander a drunk. What do you think you're being arrested for?" *Id.* ¶ 11. Plaintiff was taken into custody, and lodged at the Iosco County Jail. Plaintiff was released on bond on June 8, 2008.

Defendant attached to his motion a transcript of Plaintiff's preliminary examination held on August 19, 2008, where Defendant testified. Def. Br. Ex. 9. In particular, Defendant testified that when Plaintiff and her daughter left the police post:

> I wasn't done at the time. I wanted to get approximately a hundred samples because usually the lab, they want at least a sufficient amount. That would have been a sufficient amount. As a result of this, I contacted Sergeant Jan Johnson from the crime lab and she, about yesterday or the day before, well two days ago, it would have been two days ago. And she said as a result of this I might have to get another search warrant and get additional handwriting samples.

Prelim. Exam. 6:21-7:1. Defendant also testified that before seeking the search warrant for Sarah's handwriting exemplars he spoke to Lieutenant Riley at the Crime Lab, who instructed Defendant to obtain "a minimum of 30 [handwriting samples] but if you could get 80 to a hundred that would be better." *Id.* 10:15-11:2. Nonetheless, Defendant admitted during cross examination that he wrote in his journal that Lieutenant Riley "needs 30 samples," rather than a minimum of thirty samples. *Id.* 12:1-5. Defendant also attached to his motion the handwriting sample search warrant with the "return and tabulation" portion completed. The form provides a date of May 21, 2008, and states "Forty (40) printed handwriting samples from SARAH ROSE KUSLICK at MSP 32." Def. Br. Ex. 2.

The obstruction charge against Plaintiff was dismissed on September 24, 2008. In a two-sentence order, the court found that "whereas the search warrant had been complied with under its terms, [Cheryl Rose Kuslick] did not obstruct the service or execution of the search warrant when she told her daughter to leave the State Police Post." *See* Def. Br. Ex. 8 (order of dismissal).

II

Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover*

*Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

III

Under § 1983, an individual may bring a private right of action against anyone, who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Maine v. Thiboutot*, 448 U.S. 1 (1980). In his motion, Defendant contends that he is entitled to summary judgment on Plaintiff's § 1983 claims on the basis of qualified immunity. Generally, summary judgment based on qualified immunity is proper if the law did not put the officer on notice that his conduct would be clearly unlawful. *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002). However, if genuine issues of material fact exist as to whether the officer committed acts that would

violate a clearly established right, then summary judgment is improper. *Poe v. Haydon*, 853 F.2d 418, 425-26 (6th Cir. 1988).

A

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The privilege serves the purpose of, early in litigation, preventing suits from progressing because qualified immunity is *immunity* from suit, not merely a defense to liability. *See id.* at 200-201 (emphasis in original). Qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2001) (citation omitted).

The Sixth Circuit undertakes a three step analysis to determine whether an official is entitled to immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Id.* at 901. *See Pearson v. Callahan*, - - - U.S. - - - -, 129 S. Ct. 808, 818 (2009) (finding that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound

-10-

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

With regard to the second step, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted). *See Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) ("In determining whether a constitutional right is clearly established, the court must first look to decisions of the U.S. Supreme Court, then to decisions of the Sixth Circuit, and, finally to decisions of other circuits."). "This standard requires the courts to examine the asserted right at a relatively high level of specificity," and "on a fact-specific, case-by-case basis." *Cope v. Heltsley*, 128 F.3d 452, 458-59 (6th Cir. 1997).

Generally, there are two ways in which a plaintiff may show that "officers were on notice that they were violating a 'clearly established' constitutional right." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 1005). First, "where the violation was sufficiently 'obvious' under the general standards of constitutional care . . . the plaintiff need not show 'a body' of 'materially similar' case law." *Id.* (quoting *Brousseau v. Haugen*, 543 U.S. 194, 199 (2004)). Second, the violation may be shown "by the failure to adhere to a 'particularized' body of precedent that 'squarely govern[s] the case. . . ." *Id.* (quoting *Brousseau*, 543 U.S. at 201).

B

Generally, the Fourth Amendment requires that arrest warrants be issued only upon a showing of probable cause. *Green v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996). Similarly, to

-11-

maintain a § 1983 cause of action for malicious prosecution under the Fourth Amendment, "a plaintiff must show, at a minimum, that there was no probable cause to justify his arrest and prosecution." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (internal quotations omitted). Likewise, the third cause of action advanced by Plaintiff under § 1983, her claim for retaliatory prosecution under the First Amendment, requires evidence of "want of probable cause." *Harman v. Moore*, 547 U.S. 250, 252 (2006).

Typically, a police officer defending a § 1983 claim is entitled to rely on a judicially secured arrest warrant as satisfactory evidence of probable cause, but "an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989). In other words, an officer may be held liable under § 1983 "for making false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." *S.A. Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). Yet, to overcome a qualified immunity defense, a plaintiff must establish:

(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause.

*Id.*

Plaintiff contends that in order to overcome Defendant's assertion of qualified immunity, she has made a sufficient showing that in seeking to establish probable cause for the arrest warrant for Plaintiff, Defendant stated a deliberate falsehood or showed reckless disregard for the truth. Plaintiff emphasizes that Sarah provided Defendant with more than thirty handwriting samples; that Sarah told Plaintiff before they left the police station that she provided "more than he asked for"; that

-12-

Defendant said, "its ok you're done"; that Defendant never asked for more samples or stated that he needed more samples; that Defendant "had no problem" completing the return and tabulation of the search warrant without noting that the search was incomplete; and that the charges against Plaintiff were dismissed based on Defendant's testimony at the preliminary examination.

Defendant contends that Plaintiff has not carried the burden to demonstrate that a reasonable officer could not have believed that his conduct was lawful in light of clearly established law and the information the officer possessed. Defendant contends that he did not violate any clearly established law when he swore the complaint against Plaintiff based on her conduct at the police post and his own belief that Plaintiff frustrated his execution of the search warrant. Defendant emphasizes that the warrant authorized "handwriting samples sufficient amount requested by Lt. Thomas Riley," and that his supporting affidavit stated that Lieutenant Riley requested "at least thirty handwritten printed samples." Thus, Defendant contends that he had a reasonable basis to conclude that the search warrant authorized more than thirty or forty handwriting samples and probable cause to conclude that Plaintiff frustrated his attempts to execute the handwriting sample search warrant to his satisfaction.

Defendant may be correct, that he had a reasonable basis for believing that the search warrant authorized him to detain Sarah for one hundred handwriting samples and that Plaintiff's conduct in seeking to remove her daughter interfered with his authorized execution of the search warrant, but it is premature to reach that conclusion on the existing record. In addition to the evidence emphasized by Plaintiff, Defendant's police report ("needs thirty samples") varies from his affidavit requesting the search warrant ("at least thirty handwritten printed samples"), which varies from his testimony ("if you could get 80 to 100 that would be better"), which also varies from his affidavit

-13-

in support of the warrant for Plaintiff's arrest. Even if Judge Yenior's determination that the search warrant did not prohibit Plaintiff from retrieving her daughter is not subject to collateral estoppel, there remains a legitimate question of fact.

Defendant also contends that Plaintiff cannot prove a violation of her Fourth Amendment rights because Plaintiff's conduct created probable cause for Defendant to seek an arrest warrant and complaint for Plaintiff's interference with the execution of the search warrant. That is, Defendant contends that Plaintiff refused to follow a command of a police officer acting in the scope of his duties in violation of Mich. Comp. Laws § 750.81d. The statute provides that "an individual who . . . obstructs . . . a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony . . . ." The statute further provides that " '[o]bstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." *Id.* § 750.81d(7)(a). Defendant contends that the facts and circumstances within his knowledge, focusing exclusively on Plaintiff's conduct in response to his order, were "sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense," quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Some elaboration is warranted here, because the Court continues to labor under the belief that Plaintiff's § 1983 cause of action for at least unlawful arrest and false imprisonment is not defeated by Defendant's probable cause to believe the elements of Mich. Comp. Laws § 750.81d alone, are met. *See Brooks v. Rothe*, 577 F.3d 701, 707 (2009) ("Brooks's argument that Rothe's command was unlawful can therefore succeed only if her actions involved no physical interference."). Prior to the most recent amendments to the Michigan statute and *People v. Ventura*, 686 N.W.2d 748, 751 (Mich. Ct. App. 2004), Michigan law provided that individuals could resist

an illegal arrest by means short of the use of deadly force. *People v. Freeman*, 612 N.W.2d 824 (Mich. Ct. App. 2000); *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001) (noting that "under Michigan law, while arrestees have the right to use physical force to resist an unlawful arrest, third-party intervenors do not").

Similarly, prosecutors also had to prove that the law enforcement officer's order, directive, or detention was itself lawful as an element of the state law offense. *People v. Reed*, 203 N.W.2d 756 (Mich. Ct. App. 1972). The change in state law has been criticized. *See Bourgeois v. Strawn*, 452 F. Supp. 2d 696, 709-10 (E.D. Mich. 2006) (describing the proposition that "police can manufacture grounds to arrest a person innocent of wrongdoing simple by telling him to leave his own home without any lawful authority to do so and then arresting him for violating that directive" as "disturbing"). The rationale for the change in the law is understandable; it is better that the lawfulness of law enforcement's orders should be resolved in the courtroom and not in the field, but the changes to the state statute did not supplant the § 1983 cause of action for an illegal order or detention.

In the immediate case, the fact that Defendant can establish probable cause to believe that Plaintiff resisted his directive that she not interfere with his execution of the search warrant with Sarah is not sufficient by itself to justify qualified immunity if his order to Plaintiff that she not interfere was without legal foundation. Again, if collateral estoppel does not apply, the issue will turn on the question of whether Defendant reasonably believed the representation that he made to obtain the search warrant, that he "required one hundred handwriting samples and only obtained forty, because [Plaintiff] ordered her daughter to leave with her not giving the amount of samples required, violating the search warrant."

-15-

IV

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [Dkt. # 9] is **DENIED**.

                s/Thomas L. Ludington
                THOMAS L. LUDINGTON
                United States District Judge

Dated: December 23, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 23, 2009.

                s/Tracy A. Jacobs
                TRACY A. JACOBS